UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACCURACY IN MEDIA, INC.,<br><br>     Plaintiff,<br><br>          v.<br><br>NATIONAL TRANSPORTATION SAFETY BOARD,<br><br>     Defendant. | Civil Action No. 03-00024 (CKK) |

**MEMORANDUM OPINION**
(March 29, 2006)

Plaintiff Accuracy in Media, Inc. ("AIM"), a non-profit corporation engaged in the business of promoting fairness, balance, and accuracy in news, brings this action against Defendant the National Transportation Safety Board, an agency of the United States government ("NTSB" or "the Board") alleging that the Board's failure to provide certain requested documents constituted a violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Comp. ¶ 10.  Currently before the Court are Defendant's Motion for Summary Judgment as to Plaintiff's FOIA claim, Plaintiff's Opposition, Defendant's Reply, Plaintiff's Surreply, and Defendant's Response to Plaintiff's Surreply.

Upon a searching examination of the parties' filings, the attached exhibits and declarations, the relevant case law, and the entire record herein, the Court shall grant Defendant's Motion for Summary Judgment.

**I: BACKGROUND**

By letter dated May 30, 2002, Plaintiff made a FOIA request to the NTSB.  Def.'s Stmt. of Mat. Facts Not in Dispute ("Def.'s Stmt.") ¶ 1; Pl.'s Resp. to Def.'s Stmt. ("Pl.'s Resp.") ¶ 1 (not

contesting). The NTSB received Plaintiff's FOIA request on June 10, 2002. Def.'s Stmt. ¶ 1; Pl.'s Resp. ¶ 1. In its May 30, 2002 letter, Plaintiff requested "the following items related to the NTSB's [May 3, 2002] decision to invite the public to bid on the wreckage of TWA Flight 800,":[1]

>   (1) all correspondence, memoranda, and memos with TWA and insurance companies concerning the disposal of the wreckage from TWA Flight 800;
>
>   (2) all correspondence with attorneys representing parties interested in or involved with the disposal of the wreckage from TWA Flight 800;
>
>   (3) the minutes of all meetings of the NTSB during which the matter of the disposal of the wreckage from TWA Flight 800 was discussed;
>
>   (4) the minutes of all meetings with NTSB staff during which the matters of the disposal of the wreckage from TWA Flight 800 was discussed;
>
>   (5) all written opinions or communications from the Board's General Counsel advising on the legality of the disposal;
>
>   (6) all written communications and contracts with the owner of the Calverton hangar concerning the rent paid for storing the wreckage of TWA Flight 800 and concerning the rent reduction when the wreckage was recycled;
>
>   (7) inventory of all recovered items that were stored in the Calverton hangar;
>
>   (8) inventory of items stored in the FBI's "bomb room," which is the storage area not open to NTSB personnel before the FBI investigation was closed;
>
>   (9) list of all items removed from the hangar during the investigation, and all records of when and where these items were taken and when they were returned;

---

[1] After departing from JFK Airport in New York on July 17, 1996, at about 8:19 p.m., Trans World Airlines Flight 800, a Boeing 747-131, crashed into the Atlantic Ocean near East Moriches, New York. *See* Def.'s Mot. for Summ. J., Ex. 1 (6/17/04 Decl. of Melba D. Moye, Chief of the NTSB's Public Inquiries/FOIA Branch, Office of Research and Engineering) (hereinafter, "Moye Decl.") ¶ 10. All 230 people on board were killed, and the airplane itself was virtually destroyed. *Id*. ¶ 9. Because of the possibility that TWA Flight 800's accident was the result of a terrorist or criminal act, the FBI was involved in an investigation surrounding the crash from July 17, 1996 to November 18, 1997. *Id*. ¶ 10. The FBI ultimately determined that a terrorist or criminal act most likely did not cause the accident, and then withdrew from active involvement in the investigation. *Id*.

>(10) all records of the metal recovered from the bodies of victims and the present location of these items;
>
>(11) all names and business addresses of the recycling contractor and insurance companies referenced in the enclosed letter of May 3, 2002;
>
>(12) all contracts which the NTSB or the U.S. government entered into with the recycling contractor and insurance companies respecting the wreckage of crashed TWA Flight 800, and related correspondence;
>
>(13) all correspondence, memoranda, memos, invitations to bid, and all contracts related to NTSB's decision to invite the public to bid on the wreckage of crashed TWA Flight 800, as referenced in the enclosed letter dated May 3, 2002; and
>
>(14) all correspondence and communication between the NTSB and George Washington University respecting the matter of the wreckage being sent to the NTSB Academy at George Washington University.

Compl. ¶ 5; Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. at 2-3.

Defendant acknowledged receipt of Plaintiff's FOIA request and informed Plaintiff that the request was assigned to the NTSB FOIA office (FOIA offfice) by letter dated July 30, 2002. Def.'s Stmt. ¶ 3; Pl.'s Resp. ¶ 3 (not contesting). The FOIA office contacted several other Board offices including the Investigator-in-Charge of the accident, members of the staff involved with the wreckage of TWA Flight 800, the Office of Family Affairs, staff of the NTSB Academy, staff of the Office of the Managing Director, staff of the Office of General Counsel, and the Public Inquiries/FOIA Branch of the Office of Research and Engineering, all of which potentially had responsive records. Def.'s Stmt. ¶ 4; Pl.'s Resp. ¶ 4 (not contesting). These offices were asked to search for and provide responsive records. Def.'s Stmt. ¶ 4; Pl.'s Resp. ¶ 4 (not contesting).

Plaintiff filed a Complaint in this Court on January 8, 2003, stating that Defendant had failed to produce any records pursuant to the request. Compl. ¶ 7. Following the filing of Plaintiff's Complaint, Defendant responded to Plaintiff's FOIA request on February 5, 2003. Def.'s Stmt. ¶ 6;

Pl.'s Resp. ¶ 6 (not contesting).  On July 6, 2004, Defendant filed a Motion for Summary Judgment on the grounds that it conducted an adequate search and turned over all records responsive to Plaintiff's request except those properly withheld under FOIA.  Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. at 1.  The NTSB asserts that it withheld certain otherwise relevant documents pursuant to FOIA Exemption 4, in order to protect sensitive commercial and financial information submitted by third parties to Defendant in response to the procurement solicitation; FOIA Exemption 5, as the deliberative process privilege was implicated; and FOIA Exemption 6 and the Privacy Act, in order to protect personal information.  Def.'s Stmt. ¶ 7-9; Pl.'s Resp. ¶ 7-9 (not contesting).  The documents withheld are identified and described in the NTSB's *Vaughn* Index, which accompanies Defendant's Motion for Summary Judgment.  Def.'s Mot. for Summ. J., Ex. 3 (*Vaughn* Index).

When confronted with Defendant's motion, Plaintiff explicitly waived any objections to NTSB responses to FOIA request numbers 1 through 6, and 11 through 14.  Pl.'s Opp'n at 1.  However, Plaintiff opposes Defendant's Motion for Summary Judgment on the grounds that Defendant's search for records responsive to FOIA request numbers 7 through 10 was inadequate under the law.  *Id.* at 2.

## II: LEGAL STANDARDS

*A.     Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying

4

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff, in response to Defendant's motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material

fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587, 106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

    *B.*    *FOIA*

Congress enacted FOIA for the purpose of introducing transparency to government activities. *See Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984). Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998). Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold requested information. *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9).

The Court reviews an agency's refusal to disclose requested documents *de novo*. *See* 5 U.S.C. § 552(a)(4)(B) (2000). Generally, when summary judgment is requested in a FOIA matter, the agency bears the burden of showing that a FOIA exemption applies. *Smith v. Dep't of Justice,* 251 F.3d 1047, 1050 (D.C. Cir. 2001). To satisfy this burden, the agency may provide a plaintiff "with a *Vaughn* index, which must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *see also Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973). In addition, the agency's accompanying affidavits or declarations must describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search.  *See SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

There is no set formula for a *Vaughn* index; so long as the agency provides the Court with materials providing a "reasonable basis to evaluate the claim of privilege," the precise form of the agency's submission -- whether it be an index, a detailed declaration, or a narrative -- is immaterial.  *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994) (internal citations omitted).  While *Vaughn* indexes are generally discretionary, affidavits alone may not suffice once it is established that records and documents are in a governmental agency's possession.  *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993) (citing *Stephenson v. FBI*, 629 F.2d 1140, 1144-45 (5th Cir. 1980)).  Therefore, it is in a governmental agency's best interest to provide a *Vaughn* index when claiming privilege, should it seek to satisfy its disclosure burden.  Typically, *Vaughn* indexes are most useful in cases involving thousands of pages of documents, when only a sampling of the documents is practical.  When dealing with voluminous records, a court will sanction an index or agency declaration that describes only a representative sample of the total number of withheld documents.  *See Bonner v. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991); *Meeropol v. Meese*, 790 F.2d 942, 956-57 (D.C. Cir. 1986); *Washington Post v. Dep't of Def.*, 766 F. Supp. 1, 15 (D.D.C. 1991).  The parties may determine the method for selecting the sample documents to be included in the index for they are in the best position to do so.  *See Washington Post*, 766 F. Supp. at 16.  The Court should only interfere with the parties determinations of privilege if and when necessary.  *Id.*

Courts must "accord substantial weight" to an agency's affidavit regarding FOIA

exemptions. 5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.'") (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200). Indeed, since FOIA exemptions are narrowly construed, should an agency correctly show that the FOIA does not apply to withheld material, the Court's review of the agency's decision is limited to determining whether the agency abused its discretion. *Mead Data Cent. Inc. v. Dep't of Air Force*, 566 F.2d 242, 259 (D.C. Cir. 1977). Therefore, should an exemption correctly apply, an agency's justification for withholding information need not allude to a specific injury. *See id.* at 258-59 (permitting the agency to rely upon the explanation that disclosure "would impair the deliberative process . . . by impairing the free and frank exchange of ideas among [agency] personnel").

Moreover, the agency must detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *Mead Data Cent. Inc.*, 566 F.2d at 261. Any non-exempt information that is reasonably segregable from the requested records must be disclosed. *Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). In addition, district courts are required to consider segregability issues even when the parties have not specifically raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In opposing a motion for summary judgment, a plaintiff must offer more than conclusory statements. *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (citing *Laningham*, 813 F.2d at 1241). Indeed, a plaintiff pursuing an action under FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly

withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all non-exempt material in the requested documents. *See Perry-Torres v. Dep't of State*, 404 F. Supp. 2d 140, 142 (D.D.C. 2005); *Twist v. Ashcroft*, 329 F. Supp. 2d 50, 53 (D.D.C. 2004) (citing *Piper & Marbury, LLP v. U.S. Postal Serv.*, Civ. No. 99-2383, 2001 WL 214217, at *2 (D.D.C. Mar. 6, 2001)).

### III: DISCUSSION

Pursuant to Plaintiff's FOIA request dated May 30, 2002, the NTSB produced certain documents in full, produced other materials in redacted form, and withheld certain information and documents pursuant to FOIA Exemptions 4, 5, and 6, and the Privacy Act, 5 U.S.C. § 552a(b). In the context of Defendant's Motion for Summary Judgment and Plaintiff's Opposition, currently at issue is only the adequacy of the Board's search in regards to FOIA Request 7 (inventory of all recovered items that were stored at the Calverton Hanger); Request 8 (inventory of items stored in the FBI's "bomb room," which is the storage area not open to NTSB personnel before the FBI investigation was closed); Request 9 (list of all items from the hangar during the investigation, and all records of when and where these items were taken and when they were returned); and Request 10 (all records of the metal recovered from the bodies of victims and the present location of these items).

  A. *Exhaustion of Administrative Remedies*

As an initial matter, it is clear that Plaintiff filed its Complaint in this Court after properly exhausting its administrative remedies. "Any person making a request to any agency for records...shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions." FOIA, 5 U.S.C. § 552(a)(4)(C)(I). Absent an extension, an agency must respond to a FOIA request within 20 days

from the date the agency receives the request.  5 U.S.C. § 552(a)(6)(A)(I).  Here, Plaintiff filed its Complaint in this Court on January 8, 2003 – nearly seven months after June 10, 2002, the date the NTSB received Plaintiff's FOIA request and before the NTSB had complied.  *See* Compl. ¶ 5, 7.  Because Defendant did not comply with the request within the applicable time period, Plaintiff constructively exhausted its administrative remedies and properly filed its Complaint before this Court.

>    B.    *The Adequacy of the Agency's Search*

Plaintiff challenges the adequacy of Defendant's search on two grounds.  First, Plaintiff relies on the argument that responsive records must exist for Requests 7–10, and, because Defendant failed to produce them, the search was *ipso facto* inadequate.  Pl.'s Opp'n at 2-4.  Second, Plaintiff argues that Summary Judgment is improper based on the NTSB affidavits and declarations because there is evidence of bad faith on the part of Defendant during the investigation of the TWA Flight 800 accident.  *Id.* at 5-6.  Both contentions are without merit.

In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness.  *Ogelsby*, 920 F.2d at 68.  "The Court employs a 'reasonableness' test to determine the 'adequacy' of search methodology, consistent with the congressional intent tilting in favor of disclosure."  *Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal citations omitted).  As such, an agency's search need not be exhaustive, merely reasonable.  *See W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 8 (D.D.C. 2000) (citing *Shaw v. Dep't of State*, 559 F. Supp. 1053, 1057 (D.D.C. 1983)); *see also Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured.").  "A search is not unreasonable simply because it fails to produce all relevant material," and this Circuit has continually stressed that "[i]t would be unreasonable to expect even the most

exhaustive search to uncover every file." *Meeropol*, 790 F.2d at 952-53. Accordingly, in examining the adequacy of an agency's search, the Court must not address "whether there might exist additional documents possibly responsive to a request, but rather whether the search for those documents was adequate." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Boggs v. United States*, 987 F.Supp. 11, 20 (D.D.C. 1997) (stating the test as "whether the search passes the threshold test of reasonableness, not whether the fruits of the search met plaintiff's aspirations.").

To obtain summary judgment on the issue of the adequacy of the records search, an agency must show "viewing the facts in the light most favorable to the requester, that . . . [it] has conducted a 'search reasonably calculated to uncover relevant documents.'" *Id.* at 552 (quoting *Weisberg*, 745 F.2d at 1485). To meet its burden, the agency may submit affidavits or declarations that explain both in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).

In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id.* at 127. An agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Ogelsby*, 920 F.2d at 68; *accord Campbell*, 164 F.3d at 27 (same). Once the agency has produced a legally sufficient affidavit supporting the adequacy of the search, the burden of demonstrating bad faith shifts to the requester. *Miller v. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing *Weisberg v. Dep't of Justice*, 705 F.2d. 1344, 1351 (D.C.Cir. 1983)). The requester cannot rebut an agency affidavit with "purely speculative claims about the existence and discoverability of other documents." *SafeCard*

*Servs., Inc.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir. 1981)) (internal quotations omitted).

To support its Motion for Summary Judgment, the Defendant submitted the Declaration of Melba D. Moye, the Chief of the Public Inquiries/FOIA Branch at the Office of Research and Engineering at the NTSB. *See* Def.'s Mot. for Summ. J., Ex. 1 (Moye Decl.) ¶ 1. Upon a consideration of Moye's Declaration and the relevant facts of this case, it is plain that Defendant's search was adequate and reasonable, and that its supporting documentation was sufficiently detailed to illustrate Defendant's good faith efforts and scope of its search. Indeed, both of Plaintiff's arguments prove to be without merit in light of the entire record.

First, while Plaintiff insists that documents responsive to FOIA Requests 7–10 exist, this assertion is not determinative of the adequacy of the Defendant's search. Importantly, the proper test is not whether responsive documents exist but instead whether the search was reasonably designed to uncover relevant documents. *Steinberg*, 23 F.3d at 551 (citing *Weisberg*, 745 F.2d at 1485). An agency can support the adequacy of its search by submitting affidavits or declarations that provide reasonable detail on the scope and method of the agency's search in a non-conclusory fashion. *Perry*, 684 F.2d at 126.

The Moye Declaration describes the search procedures Defendant followed in response to Plaintiff's FOIA requests and Moye's role in the process. *Id*. Moye is the FOIA program supervisor that the NTSB. *Id*. at 7. She is familiar with the types of records maintained by the NTSB and which offices have possession of each type of record. *Id*. The Declaration describes the four different types of records the NTSB keeps in regards to accident investigations: NTSB Public Dockets; Accident Briefs and Summaries; NTSB Accident Investigation Files; and Safety Recommendation Files. *Id*. at 9-11. Moye determined that Plaintiff's FOIA request only described

documents which might be found in NTSB Public Documents and NTSB Accident Investigation Files.  *Id*.  According to Moye, the existence and location of the Public Documents were provided to Plaintiff, and FOIA offices which possibly maintain Accident Investigation Files related to TWA Flight 800 were searched for responsive documents.  *Id*.  These offices included the Investigator-in-Charge of the accident, staff members involved with the wreckage of TWA Flight 800, the Office of Family Affairs, staff of the NTSB Academy, staff of the Office of the Managing Director, staff of the Office of General Counsel, and the Public Inquiries/FOIA Branch of the Office of Research and Engineering.  *Id*. at 12.

In an effort to undermine the adequacy of this search, Plaintiff produces parts of documents and affidavits suggesting the existence of records that it claims are responsive to its FOIA request but were not produced by Defendant.  Plaintiff contends that this evidence that these documents exist, along with the NTSB's failure to produce them, demonstrates that Defendant's search must have been inadequate.  This argument is without foundation.  Importantly, by themselves, assertions that documents must exist are "insufficient to raise material questions of fact with respect to the adequacy of the search."  *Canning v. Dep't. of Justice*, 919 F.Supp. 451, 460 (D.D.C. 1994) (quoting *Meerpol*, 790 F.2d at 952-53).  Even if these documents existed at one time, it does not mean that they exist now or that the agency has possession of them.  *See Nat'l Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  Here, Plaintiff's suggestions of withheld documents are either discredited by the record itself or constitute legally untenable speculation.

One of the records Plaintiff focuses upon and produces for the Court's consideration (several pages from the TAGS database) comes from the public docket to which Plaintiff has been directed.  Def.'s Resp. to Pl.'s Sur-Reply at 2-3.  While Plaintiff alleges that Defendant had this document but

13

did not turn it over, Pl.'s Opp'n at 3, in fact, this document was in the public docket and accessible to Plaintiff at all times and therefore not withheld by Defendant, *see* Def.'s Resp. to Pl.'s Sur-Reply at 2-3. The other record Plaintiff produces (the NTSB record 28 from Civil Action No. 03-08023) was included in the *Vaughn* index for a FOIA request on a different subject matter – i.e., the aircraft's flight path following loss of the nose section – and therefore was not responsive to Plaintiff's request. Pl.'s Opp'n at 3. As such, it is plain that Defendant did not improperly fail to produce either of these two cited records.

The rest of the information Plaintiff has provided regarding the "existence" of responsive records is mere speculation. Speculative claims of the existence and discoverability of documents are insufficient to overcome agency affidavits. *SafeCard*, 926 F.2d at 1200. Plaintiff only can point to "common reason" and "logic" to support its claim that responsive documents must exist. Pl,'s Opp'n at 3-5. This is simply not enough to overcome Moye's Declaration supporting the adequacy of Defendant's search. This Declaration provides specific detail in a non-conclusory fashion about the scope and method of Defendant's search. From this detail and lack of contrary evidence, it is clear that the search was reasonably calculated to produce documents responsive to Plaintiff's FOIA request.

Second, Plaintiff's argument that the search was inadequate because Defendant acted in bad faith in regards to the investigation of Flight 800 is also without merit. In support of this argument, Plaintiff cites a portion of the Sixth Circuit's opinion in *Jones v. Fed. Bureau of Investigation*, 41 F.3d 238 (6th Cir. 1994):

> Even where there is no evidence that the agency acted in bad faith with regard to the FOIA action itself there may be evidence of bad faith or illegality with regard to the underlying activities which generated the documents at issue. Where such evidence is strong, it would be an abdication of the court's responsibility to treat the case in the standard way and grant summary judgment on the basis of *Vaughn* affidavits alone.

41 F.3d at 242-43.  Based on this language, Plaintiff would have the Court consider the underlying activities of the NTSB in the investigation of the TWA Flight 800 accident.  In applying this language to the current case, Plaintiff mischaracterizes the Sixth Circuit's opinion.  In *Jones*, the concern was that the FBI's use of FOIA exemptions to withhold certain documents was an attempt to "cover up" agency actions that would publicly embarrass the agency.  *Id*. at 243.  The agency actions at issue in *Jones* involved the FBI's notorious COINTELPRO program.  *Id*. at 240.  With respect to COINTELPRO, there was substantial evidence that the documents would reveal that FBI had gone "beyond the detection and prevention of criminal activity" and infringed individuals' civil liberties, especially given the decision by the Senate Select Committee on Intelligence (the Church Committee) to issue a 1976 report, on the heels of an extensive investigation, documenting systematic violations of civil rights during COINTELPRO .  *Id.* at 240, 243.  Therefore, the underlying agency actions were relevant to a motive for the agency's improper use of FOIA exemptions to hide embarrassing information.  The remedy for such a situation is an *in camera* review of the documents withheld, after which the court determines if they should be released or are properly exempted.  *Id*. at 243-44.

This case is distinguished from *Jones* in two ways.  First, Plaintiff in this case is not challenging the use of exemptions to withhold responsive documents, but instead is challenging the adequacy of the search for failure to find responsive documents.  The standard from *Jones* does not apply to this situation and the agency's underlying actions in investigating Flight 800 are not relevant as to whether the search was adequate.  The remedy in *Jones* further clarifies that these two cases cannot be treated the same because in this case there are no documents being withheld for the Court to review *in camera*.

Second, there is simply no established, supportable evidence of bad faith in this case. While a requester cannot challenge the adequacy of a search based on the underlying actions that are the subject of the request, it may challenge the adequacy of a search by arguing that the search itself, rather than the underlying agency actions, was conducted in bad faith. An agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Ogelsby*, 920 F.2d at 68; *Campbell*, 164 F.3d at 27. Agency actions and affidavits are presumed to be conducted in good faith absent evidence to the contrary. *Jones*, 41 F.3d at 242 (citing *Dep't of State v. Ray*, 502 U.S. 164, 179, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991)). The burden overcoming this presumption is on the requester. *Miller*, 779 F.2d at 1383.

Though it does not appear that Plaintiff made this specific argument in contesting the good faith in the agency's search,[2] even assuming *arguendo* that it made such an allegation, Plaintiff fails to support such a claim with evidence of bad faith on the part of the Defendant. Plaintiff refers to the affidavits of James Speer and others as evidence of bad faith on the part of Defendant. Pl.'s Opp'n at 5; *see also* Pl.'s Opp'n, Ex. C (Affidavit of James Speer, June 18, 2003); *id.*, Ex. B (Affidavit of Ronald Donaldson, Feb. 27, 2003); *id.*, Ex. D (Affidavit of Fritz Meyer, Jan 7, 2003). A review of these affidavits makes it clear that it is these individuals' collective opinion that there was an attempt to cover up the causes of the accident during the investigation. Pl.'s Opp'n, Ex. C (Affidavit of James Speer, June 18, 2003). Plaintiff is apparently relying on the *Jones* standard of bad faith in the underlying activities that would cause an agency to attempt to use FOIA exemptions to withhold

---

[2] Plaintiff argues that "there is ample evidence of bad faith or illegality regarding the underlying activities which generated the records at issue" and not that there was evidence on the part of Defendant in regards to the search. Pl.'s Opp'n at 5.

documents to cover up an event embarrassing to the agency.  As previously discussed, with this action, Plaintiff is not challenging any FOIA exemptions but is only challenging the adequacy of the NTSB's search.  *See* Pl.'s Opp'n at 1-6.  In contrast, Plaintiff's affidavits only discuss the accident investigation and does not so much as mention the NTSB's search in response to Plaintiff's FOIA request.  *See, e.g.*, Pl.'s Opp'n, Ex. C (Affidavit of James Speer, June 18, 2003).  While such conspiracy theories may well have their place, it is simply the case that Plaintiff here has failed to present any evidence that *the search for responsive records was conducted in bad faith* or in any way designed as a coverup of the accident investigation's alleged deficiencies.  Moreover, and perhaps more importantly, in contrast to *Jones*, where there were extremely well-documented reports and investigations that confirmed the FBI's violations of civil rights and provided motive for a cover-up, such documentation and established violations simply are not present here.  Whereas the *Jones* court could consider the findings of the Church Committee and a myriad of evidence suggesting ill-motive, Plaintiff's affidavits here simply reflect the disagreement of certain individuals with the conclusions made during and outcome of the NTSB's investigation.  *See id*.  Despite the fact that these affidavits express disagreement with the ultimate result, they do not assert – nor do they provide any substantial evidence that would support a theory – that the NTSB has a motive to obfuscate the real evidence at issue and cover-up the truth.  Plaintiff simply lacks any foundation or support for its theory that the NTSB intentionally conducted an insufficient search in order to prevent the truth about TWA Flight 800 from becoming public.

     Because Defendant demonstrated through the Moye Declaration that its search was reasonably designed to uncover responsive records and Plaintiff has failed to undermine either the Moye Declaration or the scope and adequacy of the NTSB's search, the Court concludes that the NTSB's search for documents responsive to Plaintiffs FOIA request was adequate.

## IV: CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's Motion for Summary Judgment.  An Order accompanies this Memorandum Opinion.


Date:   March 29, 2006

                                         /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge